UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——————

DAVID TODD BENNETT, SR.,

                    Plaintiff,                  Case No. 1:16-cv-1203

v.                                     Honorable Janet T. Neff

S. L. BURT et al.,

                    Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## **Factual Allegations**

Plaintiff David Todd Bennett, Sr. is incarcerated with the Michigan Department of Corrections at the Muskegon Correctional Facility (MCF) in Muskegon Heights, Michigan. Plaintiff sues four defendants in their official and personal capacities: MCF Warden S. L. Burt; MCF Classifications Director R. Kitchens; MCF Food Service Director R. Eckert; and former MCF Food Service shift supervisor (unknown) Mosley. Plaintiff raises only one claim against these Defendants. He alleges that they violated his First Amendment right to freely exercise his religion when they removed him from a kitchen work detail because he refused to work on Saturdays, his sabbath day of rest. Plaintiff seeks a declaratory judgment that Defendants' actions violated his First Amendment rights as well as compensatory and punitive damages from each Defendant.

Plaintiff's allegations are concise:

On [Wednesday] 3/30/16 Plaintiff recieved [sic] a callout/itinarary [sic] for a work detail in the chow hall. Immediatly [sic] upon reporting for work Plaintiff spoke with Ms. Mosley about the days of work for this detail. Ms. Mosley informed Plaintiff his scheduled days for work were Saturday-Wednesday. Plaintiff then stated to Ms. Mosley that he would not be able to work on Saturday as that day is his religious sabbath day for rest, and it would be a violation of his First Amendment right to freedom of religion to be forced to work. Ms. Mosley then stated that per policy Plaintiff would need to get a religious release from the chaplain.

At the end of Plaintiff's work shift on Wednesday 3/30/16, after returning to his housing unit, the unit officer instructed Plaintiff to the L.T.A. building and speak with Defendant R. Kitchens, Plaintiff then was directed to the chow hall to speak with Food Service Director Eckert, in an attempt to get Plaintiff to reconsider his position, to no avail, at which time Eckert sent Plaintiff back to classifications to speak with R. Kitchens again, who informed Plaintiff that there was nothing he could do other than remove Plaintiff from the callout.

On [Thursday] 3/31/16, after not recieving [sic] a callout for work, Plaintiff wrote a kite to warden S. Burt explaining the situation and the attempt to violate Plaintiff's First Amendment rights. As of the filing of this complaint there has not been any response from warden Burt on this matter.

- 2 -

On [Monday] 4/4/16 after not recieving [sic] any response from warden Burt Plaintiff filed a Step I grievance.

On [Thursday] 4/07/16 after filing the grievance Plaintiff was reinstated back to work in the chow hall dinning [sic] room.

(Compl., ECF No. 1, PageID.7, 8.)  Plaintiff's allegations are insufficient to state a claim for violation of his First Amendment rights.

## Discussion

### I.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff alleges that Defendants infringed his First Amendment right to freely exercise his religion.

II. First Amendment right to free exercise of religion

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. CONST. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and

(3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

### A.   Sincere religious belief

"A prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.' " *Flagner*, 241 F.3d at 481 (quoting *Kent*, 821 F.2d at 1224). Purely secular views or personal preferences will not support a Free Exercise Clause claim. *Frazee v. Ill. Emp't Sec. Dep't*, 489 U.S. 829, 833 (1989). "Only beliefs rooted in religion are protected by the Free Exercise Clause . . . ." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 713 (1981). "A religious belief which is not sincerely held or a belief which is purely secular does not require the prison to consider accommodation." *Mosier v. Maynard*, 937 F.2d 1521, 1526 (10th Cir.1991) (citing *Johnson v. Moore*, 926 F.2d 921, 923 (9th Cir.1991)); *see also Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir.1999) (holding that prison officials may inquire into the sincerity of an inmate requesting kosher meals); *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir.1987) (holding that prison authorities may deny insincere requests for religious meals). In the absence of such an inquiry into the sincerity of the religious beliefs, prisoners would be free to assert false religious claims that are actually attempts to gain special privileges or to disrupt prison life. *Ochs v. Thalacker*, 90 F.3d 293, 296 (8th Cir.1996).

When inquiring into the sincerity of an inmate's religious beliefs, prison officials should not attempt to evaluate the truth or validity of the beliefs. *United States v. Seeger*, 380 U.S.

- 5 -

163, 184–85 (1965).   "[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas*, 450 U.S. at 714. Accordingly, the inquiry should focus on whether the beliefs are "truly held" and whether they are "religious in nature." *Mosier*, 937 F.2d at 1526 (quoting *Martinelli v. Dugger*, 817 F.2d 1499, 1504 (11th Cir.1987)).   But it is beyond dispute that "[d]efendants have the right to ensure that each prisoner is sincere in his belief . . . ." *Perkins v. Booker*, No. 2:08-cv-97, 2009 WL 2058780, at *7 (W.D. Mich. May 29, 2009); *see also McQuiter v. Burnett*, No. 2:07-cv-100, 2008 WL4534110, at *10 (W.D. Mich. July 30, 2008).

B.     Substantial burden

Only if the prisoner makes this threshold showing of a sincerely held religious belief will the Court consider "whether the challenged practice of the prison officials infringes on the religious belief . . . ." *Kent*, 821 F.2d at 1224–25.   A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion."). "[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water of Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007).   "[A] 'substantial burden' is a difficult threshold to cross."   *Id.* at 736.   "'[A] 'substantial burden' must place more than an inconvenience on religious exercise.'"   *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir.2004)).   A particular government action will

not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Living Water*, 258 F. App'x at 739.

A substantial burden stands in contrast to a *de minimis* burden on the free exercise of religion. Burdens that are less than substantial or isolated are not of constitutional dimension. *See Brown v. Graham*, 470 F. App'x 11, 15 (2d Cir. 2012); *Norwood v. Strata*, 249 F. App'x 269, 272 (3d Cir. 2007); *Walsh v. Louisiana High Sch. Athletic Ass'n*, 616 F.2d 152, 158 (5th Cir. 1980); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010); *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999); *White v. Glantz*, No. 92-5169, 1993 WL 53098 (10th Cir. Feb. 25, 1993); *Greenburg v. Hill*, No. 2:07-CV-1076, 2009 WL 890521, at *8 (S.D. Ohio Mar. 31, 2009); *Al-Amin v. TDOC Comm'r*, No. 3:12-cv-00249, 2012 WL 1231737, at *5 (M.D. Tenn. Apr. 11, 2012); *Crump v. Best*, No. 09-14323, 2010 WL 940037, at *3 (E.D. Mich. Feb. 4, 2010).

      C.    Substantial burdens on sincere religious belief can be justified by legitimate penological objectives

Even if the government action imposes a substantial burden, it may still pass constitutional muster if "the challenged practice of the prison officials furthers some legitimate penological objective." *Kent*, 821 F.2d at 1224–25. While inmates retain First Amendment rights to the free exercise of religion, prison officials may impinge on these constitutional rights where their actions are "reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

    1.    does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

- 7 -

2.      are there alternative means of exercising the right that remain open to prison inmates;

3.      the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4.      whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors.  *Id.*  ("[A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational").  If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest.  *Id.* (citations omitted).  It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint."  Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest.  *Id.*

II.      Plaintiff's belief regarding Sabbath observance

Supreme Court decisions regarding Sabbath observance demonstrate what Justice Ginsburg described as the "conflicting pressures" caused by the "Religion Clauses of the First Amendment."  *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).  The Supreme Court has concluded, on the one hand, that the Free Exercise Clause precludes the state from penalizing a person who

- 8 -

refused employment that would require her to work on her Sabbath.  *See Sherbert v. Verner*, 374 U.S. 398 (1963); *see also Hobbie v. Unemployment Appeals Comm'n of Florida*, 480 U.S. 136 (1987).  But, the Supreme Court has concluded, on the other hand, that the Establishment Clause precludes the state from providing Sabbath observers with an absolute and unqualified right not to work on their Sabbath.  *See Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703 (1985).

In an attempt to navigate the "'room for play in the joints' between the Clauses," *Cutter*, 544 U.S. at 719 (quoting *Walz v. Tax Comm'n of City of New York*, 397 U.S. 664, 669 (1970)), the MDOC has promulgated a policy directive regarding the religious beliefs and practices of Michigan prisoners.  *See* MDOC Policy Directive 05.03.150 (effective Jan. 22. 2015).  The directive is premised on the following statement of policy: "Prisoners shall be permitted to exercise their religious beliefs with the constraints necessary for the safety, security and good order of the facility."  *Id.*  The policy directive provides:

> Each prisoner shall be allowed to identify his/her religious affiliation, but will not be recognized as belonging to, or allowed to participate in the services or activities of, more than one religious group at any given time.  Prisoners may change their religious affiliation no more often than twice a year and must provide written notice of the change to the institutional Chaplain. The Declaration of Religious Preference form (CSJ-177) shall be used to identify and change religious affiliation.  The form shall not be retained in any of the prisoner's commitment files, unless requested in writing by the prisoner.  Except in SAI, the Warden shall ensure that the prisoner's religious affiliation as identified on the Declaration of Religious Preference form is entered on the Department's computerized database within five business days after receipt of the form by the Chaplain.

*Id.,* ¶R.  With regard to "holy day" observance, the policy directive states:

> Prisoners may be released from work or school assignments to attend group religious services and approved holy day observances. However, prisoners shall not be released to attend other religious activities. A prisoner must submit a written request to the Warden or designee to be released from his/her work or school assignment at least 15 calendar days prior to the service or holy day observance. Prisoners released from a work or school assignment to attend group religious services or holy day

- 9 -

observances will not be paid for their absence from the assignment.  Prisoners shall not return to the assignment at the conclusion of the group religious service or holy day observance unless specifically requested to do so by the work or school supervisor.

*Id.*, ¶AA.[1]

## A.    Plaintiff's religious belief

The scope and nature of Plaintiff's religious belief, beyond the statement that "Saturday . . . is his religious sabbath day for rest," (Compl., ECF No. 1, PageID.7), is not apparent from his complaint.  Plaintiff does not allege that Defendants Mosley, Eckert, or Kitchens, the MDOC personnel he spoke with about his religious belief on March 30 were responsible for assessing the sincerity of his religious belief or granting accommodations based on that belief.  Plaintiff fails to indicate whether he had made his religious belief known to the MDOC by completing the Declaration of Religious Preference form, as required by MDOC policy directive 05.03.150, when he transferred to MCF during the fall of 2015.  Plaintiff also fails to indicate whether he submitted a written request for release from Saturday work to the Warden or designee,[2] a prerequisite to obtaining the accommodation under the MDOC policy directive.

---

[1]This Court has concluded that the policy directive at issue, or its virtually identical predecessor, "is not unconstitutional on its face." *Porter v. Caruso*, 479 F. Supp. 2d 687, 700 (W.D. Mich. 2007).  The United States District Court for the Eastern District of Michigan has considered an earlier and more restrictive policy directive provision regarding release from work for religious services and holy day observances, and concluded the provision was constitutional. *Totten v. Caldwell*, No. 11-12485, 2012 WL 3965045, at *12-13 (E.D. Mich. July 31, 2012) report and recommendation adopted, 2012 WL 3964989 (Sep. 11, 2012). The "religious work release" policy directive at issue in *Totten* was more restrictive in that it provided that prisoners shall not be released from work or school assignments to attend services or observances. *Id.*; *see also* MDOC Policy Directive 05.03.150 (effective Sep. 20, 2007).

[2]Based on Defendant Mosley's response to Plaintiff's statement that he could not work on Saturdays for religious reasons, it appears that the "designee" may have been the Chaplain.  Whether or not the Chaplain is the designated recipient of such requests, it appears the request must, at some point, pass through the hands of the Chaplain because the policy directive places responsibility for recording religious preferences in the Chaplain's hands.

- 10 -

Critically, simply requesting a religious accommodation is not enough.  *See Crump v. Prelesnik*, No. 1:10-cv-353, 2013 WL 1338027, at *3 (W.D. Mich. Feb. 13, 2013) ("[A] request to attend group religious services is not sufficient without providing the chaplain with evidence of religious preference."); *Snyder v. Trudell*, No. 08-10047, 2009 WL 37183, at *11 (E.D. Mich. Jan. 6, 2009) ("Prison officials are not required to accept a prisoner's bald assertion of religious faith."); *Moffat v. Michigan*, No. 2:06-cv-300, 2007 WL 2904041, at *1 (W.D. Mich. Oct. 4, 2007) ("Until the prison recognizes that plaintiff's faith is sincerely Judaism, plaintiff cannot receive a Kosher meal.  The prison has set forth a policy for granting Kosher meal requests.  A prisoner is not simply entitled to a Kosher meal upon request."); *Adams v. Burnett*, No. 2:06-cv-72, 2007 WL 329992, at *5 (W.D. Mich. Jan. 31, 2007) ("Prisoners are not automatically entitled to specific religious accommodations just by claiming an entitlement.  The prison must maintain some aspect of control in accommodating prisoners['] needs.").  Where Plaintiff alleges nothing more than "a bald assertion of religious faith" and " just . . . claim[s] an entitlement[,]" it is questionable whether his statement of a sincere religious belief is sufficient.  In this instance, however, the Court need not rely on the insufficiency of Plaintiff's statement of his sincere religious belief to dismiss his claims because he has failed to allege that his belief, sincere or not, was substantially burdened.

**B.      The burden on Plaintiff's belief**

Based on Plaintiff's allegations, the burden he suffered because he was religiously precluded from working on Saturdays was, at most, the loss of four days of work.  He alleges he was initially called upon to work Saturday through Wednesday.  He worked Wednesday, March 30, and then, because he was unwilling to work Saturdays, was removed from that work assignment.  He then began a new work assignment the following Thursday, April 7.  Apparently, since that time,

he has been working a schedule that does not conflict with his religious belief.  Had he been permitted to work his intial schedule, with the exception of Saturday, April 2, he would have worked Sunday, April 3, through Wednesday, April 6: four days.

Such a brief delay is far short of the fifteen-day delay contemplated by MDOC policy directive 05.03.150, ¶AA.  Indeed, based on Plaintiff's allegations, it appears that once he complained that he could not work a Saturday-Wednesday assignment for religious reasons, he was relieved of that assignment and, the next week, he received an assignment that did not run afoul of his religious beliefs.  He was never compelled to work on his Sabbath, as was the plaintiff in *Jordan v. Caruso*, No. 2:08-cv-261, 2010 WL 3220143, at *7 (W. D. Mich. Aug. 10, 2010) (holding that ninety-day period of that included Saturday work, before plaintiff could request a schedule change, stated a claim that survived summary judgment). And he was never punished for failing to work on his Sabbath, as was the plaintiff in *Snyder*, 2009 WL 37183, at *5-9 (court concluded that two major misconduct citations for failing to work on Saturday, as ordered, might constitute substantial burden).  The burden Plaintiff suffered was even less than the plaintiff suffered in *Crump v. Winn*, No. 11-10409, 2012 WL 1033663 (E.D. Mich. Mar. 5, 2012) (concluding that change in prayer time, and almost immediate change back, that resulted in prisoner missing Friday prayer on two occasions was not a substantial burden) and *Crump v. Best*, No. 09-14323, 2010 WL 940037, at *3 (E.D. Mich., Feb. 4, 2010) ("[O]nce Plaintiff reported the problem, Deputy Warden Winn worked, within days, to remedy the issue . . . [; t]hus, the burden on Plaintiff's practice of religion was de minimis, at best.").  At most, application of MDOC policy directive 05.03.150 resulted in a short delay.  That delay, less than a week, made the practice of Plaintiff's beliefs a little more expensive.  That is not a substantial burden of constitutional concern.  *See Braunfield v. Brown*, 366 U.S. 599, 605 (1995)

- 12 -

(concluding that there was no substantial burden on an individual's free exercise of religion where the law merely "operate[d] so as to make the practice of [the individual's] religious beliefs more expensive"); *see also Living Water*, 258 F. App'x at 729.

C.      The justification for the regulation

Even if Plaintiff had adequately stated his sincere religious belief and even if missing four days of work were a substantial burden, the justification for a brief delay between asserting a right to rest on the Sabbath and recognition of the sincerity of that right is apparent and compelling. Some delay is simply inherent in the process of assessing the sincerity of a religious belief and the propriety of a request for accommodation in light of that sincere religious belief.

The MDOC has adopted the Declaration of Religious Preference form as its principal tool in assessing the sincerity of a claimed religious belief. Requiring such a declaration is constitutionally permissible and serves important purposes:

> Registration eliminates speculation and guesswork on the part of prison officials and makes it less likely that a prisoner will manipulate the system by asserting various religions at different times. Registration also allows prison officials to gauge the interest in any particular religion on the part of the inmate population and thus decide whether a "congregation" should be allowed. Registration puts the institution on notice that certain religious accommodations will likely be sought and thereby provides the institution with time to consider if and how to implement them. This, in turn, makes such accommodations more likely and thereby reduces the circumstances in which judicial intervention will be needed. In short, registration places, at most, a slight burden on an inmate's right to religious freedom while serving as an important and beneficial "bright line" that enables prison officials to ascertain the seriousness of the inmate's religious commitment and respond accordingly.

*Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1097 (2d Cir. 1997); *see also Resnick v. Adams*, 348 F.3d 763, 768-71 (9th Cir. 2003) (reviewing *Turner* factors and holding that requiring a prisoner to submit an application for a religious meal accommodation cannot be said to abridge First

- 13 -

Amendment rights).  Maintaining that "bright line," and measuring requests for accommodation against it, inevitably takes some time.  The policy contemplates two weeks.  Here, the process took less than a week.  The delay inherent in the policy directive is justified by "[t]he prison['s need to] maintain some aspect of control in accommodating prisoners['s] needs." *Adams*, 2007 WL 329992, at *5.

**<u>Conclusion</u>**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  December 2, 2016          /s/ Janet T. Neff
                                 Janet T. Neff
                                 United States District Judge